MCGREGOR W. SCOTT
United States Attorney
KEVIN C. KHASIGIAN
ANDRE M. ESPINOSA
Assistant U. S. Attorneys
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>       v.<br><br>REAL PROPERTY LOCATED AT 5383 STONEHURST DRIVE, MARTINEZ, CALIFORNIA CONTRA COSTA COUNTY, APN: 367-230-018-7, INCLUDING ALL APPURTENANCES AND IMPROVEMENTS THERETO, ET AL<br><br><br>               Defendants. | 2:19-CV-00636-JAM-DB<br><br>**UNITED STATES' EX PARTE APPLICATION FOR A RESTRAINING ORDER AND TO APPOINT THE UNITED STATES MARSHALS SERVICE TO MANAGE AND SELL THREE *IN REM* DEFENDANTS IN DEFAULT**<br><br>[18 U.S.C. § 983(j)(1)(A) – No Hearing Required[1]] |

## INTRODUCTION

The United States of America, through undersigned counsel, hereby applies to this Court, pursuant to 18 U.S.C. § 983(j)(1)(A), for entry of a restraining order to enjoin the sale, pledge, transfer or any other means of disposing, controlling, or encumbering the *In Rem* Defendants, and any action by any person or entity that would allow or cause the defendant properties to diminish in value.  The United States also requests appointment of the United States Marshals Service ("USMS") to preserve and sell

---

[1] See, supra, pg. 10-11, ¶¶ 9-10.

three of the *In Rem* Defendants that have loans in default status, and to return any net proceeds to this case as substitute *res* for final adjudication by this Court.

The United States filed a similar Application in a related case before this Court, <u>United States v. Real Property Located at 725 Main Street, et al.</u>, Case 19-CV-00247-JAM, concerning 25 properties purchased with proceeds of an alleged tax equity fraud by DC Solar. That case focused on foreclosing DC Solar's attempts to leverage those properties in an ill-fated Chapter 11 Bankruptcy filed in Reno, Nevada, which has since been converted to Chapter 7. Prior to the bankruptcy filing, the United States informed DC Solar's counsel of 41 properties that could not be encumbered in bankruptcy given they were purchased with fraud proceeds. Despite that warning, DC Solar filed bankruptcy in Reno and moved for court approval of a financing pact with a Beverly Hills Lender, resting on the equity in approximately 25 of the 41 properties purchased with fraud proceeds. As explained herein, they lost.

This Application seeks a restraining order in the second case involving real property purchased with proceeds of the DC Solar fraud. Specifically, against 14 of the remaining properties—of the 41 properties described herein—many of which one of the new Chapter 7 bankruptcy trustees seeks to seize control of.

## BACKGROUND

**A.   Law Enforcement Execution of Search and Seizure Warrants Related to DC Solar.**

1. On December 18, 2018, as a result of a criminal investigation that remains ongoing, law enforcement agents executed a federal search warrant at 4901 Park Road in Benicia, California, the business location for DC Solar, a solar equipment company with its principal place of business in the Eastern District of California. Amended Verified Complaint for Forfeiture *In Rem* ("Complaint"), Dkt. 5, ¶ 22. On December 18, 2018, and the days that followed, law enforcement agents also executed hundreds of federal seizure warrants to restrain bank accounts, vehicles, and personal property purchased by DC Solar's principals, Jeff and Paulette Carpoff, using proceeds of the fraud. *Id.*, ¶ 20.

2. Between December 18 and 19, 2018, law enforcement agents also executed several additional search warrants at other locations associated with DC Solar and the Carpoffs.

**B.     The 41 Properties Purchased with Fraud Proceeds.**

3.      In January 2019, DC Solar's counsel contacted the U.S. Attorney's Office in the Eastern District of California to request the release of the seized personal property, so that it could be used to fund DC Solar's business operations.  The United States declined and explained that it intended to forfeit all property—personal and real—connected to the alleged fraud and, if successful in the forfeiture actions, and appropriate under controlling law and DOJ procedures, return that property to victims of DC Solar's fraud.  See In re Double Jump Inc., Case 19-bk-50102, Dkt. 12, ¶ 40-43; see also Exh. A, Letter to DC Solar's Counsel, *attached*.  DC Solar's counsel responded that it would push the company into Chapter 11 bankruptcy and seek to leverage DC Solar's assets and/or certain Carpoff personal assets to fund their reorganization efforts.  See In re Double Jump Inc., Case 19-bk-50102, Dkt. 2, ¶ 17 ("Without access to seized assets […] the Carpoff family has decided to utilize their real property assets, held through the Real Estate Debtors, to finance the Company's continued operations.").

4.      The United States explained to counsel that the government would not return seized property to DC Solar to facilitate a fruitless pre-bankruptcy effort to reorganize a company that the evidence strongly suggested was engaged in nearly no legitimate business.  Similarly, the government made clear that it would refuse to return seized property to facilitate a reorganization of the company if DC Solar entered bankruptcy because the fraud predated the bankruptcy filing and any seized property would therefore not be part of the bankruptcy estate.  In a letter to DC Solar's counsel, the United States identified 41 real properties purchased with fraud proceeds and titled in the name of the Carpoffs or one of their wholly-owned real estate LLCs.  Exh. A.  The government explained that the 41 real properties, like the assets seized in December 2018 to disable the fraud, were purchased with fraud proceeds in transactions that predated any threatened bankruptcy by DC Solar and could not to be leveraged to finance a proposed reorganization.  Id.

5.      Approximately two days later, DC Solar and several related entities filed for Chapter 11 bankruptcy in U.S. Bankruptcy Court in Reno, Nevada.  In re Double Jump Inc., Case 19-bk-50102, Dkt. 1.  The debtors are DC Solar's parent company, Double Jump, Inc., a Nevada corporation since 2018,[2] its two business divisions, DC Solar Distribution and DC Solar Solutions,[3] businesses

---

[2] In re Double Jump, Inc., Case No. 19-bk-50102, the "Master Case."
[3] In re DC Solar Solutions, Inc., Case No. 19-bk-50130 and In re DC Solar Distributions, Inc., Case No. 19-bk-50131.

United States' Ex Parte Application
For a Restraining Order

headquartered in Benicia, California, and California LLCs that held title to real estate purchased by the Carpoffs using fraud proceeds: Dora Dog Properties, LLC, Blue Dog Properties, LLC, Brandy Boy Properties, LLC, Park Road, LLC, and 475 Channel Road, LLC, and 140 Mason Circle, LLC (hereinafter "California LLCs").[4]

6. As part of its first-day bankruptcy motions, DC Solar's counsel sought approval for a financing pact with a Beverly Hills lender that pledged to loan up to tens of millions of dollars to DC Solar in return for secured interests in certain real property. In re Double Jump Inc., Case 19-bk-50102, Dkt. 23. Each of those real properties is owned by the California LLCs and each was identified by the United States as being among the 41 properties purchased with fraud proceeds, the value of which the government had informed counsel it intended to protect from dissipation and diminishment for the benefit of DC Solar's fraud victims. Id.; see also Exh. A.

**C. The United States' First Forfeiture Case Against 25 of the 41 Properties Purchased with Fraud Proceeds.**

7. On February 8, 2019, in the Eastern District of California, the United States filed an *in rem* forfeiture action against 25 properties connected to the fraud and subject to the Debtor's proposed financing deal. See United States v. Real Property Located at 725 Main Street, et al., Case 19-CV-00247-JAM. The Carpoffs formed and own the LLCs that hold title to those properties. The LLCs are: Dora Dog Properties, LLC, Dog Blue Properties, LLC, Brandy Boy Properties, LLC, 140 Mason Circle, LLC and Park Road, LLC. Dkt. 3, Case 19-CV-00247-JAM, at ¶ 5, 11-15.

8. The Carpoffs have since agreed to forfeit any and all interest in those real properties to the United States in that forfeiture action. See Case 19-CV-00247-JAM, Dkt. 42-3; see also Exh. C.

**D. The Bankruptcy Court Finds that Automatic Stay Does Not Apply to the Forfeiture Action.**

9. On February 8, 2019, the Bankruptcy Court heard oral argument on DC Solar's first-day bankruptcy motions, including a motion to secure debtor-in-possession financing to support its operations by encumbering certain of the *In Rem* Defendants. During argument, DC Solar's counsel conceded that federal forfeiture proceedings—and, indeed, the first Sacramento Forfeiture Action—are

---

[4] In re Dora Dog Properties, LLC, 19-bk-50103, In re Blue Dog Properties, LLC, 19-bk-50104, In re Brandy Boy Properties, LLC, 19-bk-50105, In re 475 Channel Road, LLC, 19-bk-50106, In re Park Road, LLC, 19-bk-50108, and 140 Mason Circle, LLC, 19-bk-50109.

not subject to the Bankruptcy Code's automatic stay provision pursuant to United States v. Klein (In re Chapman), 264 B.R. 565 (9th Cir. BAP 2001).  See Exh. B, Transcript of Proceedings, at 107, 114, *attached*.  However, counsel requested that the Bankruptcy Court nonetheless stay the first Forfeiture Action and craft an order that would allow DC Solar to move forward with the proposed financing deal and protect the proposed lender in the first Sacramento Forfeiture Action.  Id. at 107-109.  The Bankruptcy Court refused.  Id. at 144-5.[5]

10. The Bankruptcy Court found that "a forfeiture action is not stayed" under the Bankruptcy Code, citing the Ninth Circuit BAP's decision in In re Chapman and the relevant Bankruptcy Code provisions.  Id. at 143.  The Bankruptcy Court stated that "It's pretty clear in Section 362(b) and (4) [the automatic stay provisions] … that the stay doesn't apply to various kinds of government enforcement of claims of money judgment or otherwise, which I think might be also considered as allowing the forfeiture."  Id. at 144.  Accordingly, the Court declined to enter the order requested by DC Solar and the Beverly Hills lender refused to finance the deal absent such an order.[6]  Id. at 145.

---

[5] If requested by the Court, the United States will file a copy of the entire 156-page transcript.
[6] The Bankruptcy Court's ruling was clear:

| | |
|---|---|
| Counsel: | What I was saying is, in order for our client to consider -- even consider doing the DIP lending, I would -- we would need and require that the Court enter all of the findings that we've talked about [concerning the automatic stay and forfeiture proceedings in the U.S. District Court] – |
| THE COURT: | Which I -- |
| Counsel: | -- which include – |
| THE COURT: | Which I can't do. |
| Counsel: | Okay.  So if the Court can't enter that order -- |
| THE COURT: | No. |
| Counsel: | -- then we are not -- |
| THE COURT: | Yeah. |
| Counsel: | -- then we will not be providing the DIP lending. |

5

**E.     Conversion to Chapter 7 and the California LLC Trustee's First Demand for Authority and Control over Several of the Forty-One Properties Purchased with Fraud Proceeds from DC Solar's Investors.**

11.     The Chapter 11 bankruptcy cases have since been converted to Chapter 7 proceedings and separate trustees have been appointed for the DC Solar bankruptcy ("DC Solar Trustee") and bankruptcies for the LLCs holding title to the *In Rem* Defendants ("California LLC Trustee").  A short time after his appointment, the California LLC Trustee, like the predecessor Chapter 11 Debtor, contacted the U.S. Attorney's Office in the Eastern District of California to seek authority over certain of the real property purchased with fraud proceeds.  Exh. G.  The United States again explained that it intended to forfeit the forty-one real properties identified in the letter sent to Debtor's counsel in January 2019, as those properties can be traced back to the fraud and were purchased entirely with stolen money.  Furthermore, the United States informed counsel of the Bankruptcy Court's findings in February 2019 and the Debtor's failed attempt to exert control over the properties purchased with fraud proceeds.  Id.

12.     Nonetheless, a few days later, the California LLC Trustee moved the Bankruptcy Court for an order authorizing the trustee to take over management and control of certain properties, including at least five properties that the United States identified as being among the 41 properties purchased with fraud proceeds.  In re Double Jump Inc., Case 19-bk-50102, Dkt. 539.  The California LLC Trustee noted that it did not seek control over the 25 properties subject to forfeiture in the first Sacramento Forfeiture Action, "until the forfeiture action is resolved or by mutual agreement of the parties."  Id.

13.     In response, the United States filed a second Forfeiture Action, discussed, supra, and wrote yet another letter to bankruptcy counsel outlining the relevant federal law governing the intersection of forfeiture and bankruptcy and explaining the Bankruptcy Court's February 8, 2019 findings.  See Exh. G.  The United States reiterated what it had told to original Debtor's counsel in January 2019, what was argued in Bankruptcy Court on February 8, 2019, and what the United States believed to be the current state of law in this Circuit.  Id.  Particularly,

> As we discussed by telephone last week, proceeds from liquidation of any seized assets ordered forfeited by the U.S. District Court must be preserved for distribution to the victims of the fraud and money laundering offenses alleged in the forfeiture complaint. While you may disagree, the law is clear. See United States v. Klein (In re Chapman), 264 B.R. 565 (9th Cir. BAP 2001) (holding forfeiture action not subject to automatic stay and recognizing "relation-back doctrine" removes property from bankruptcy estate).  See also In re VPH Pharmacy, Inc., 2018 WL

3574721, *3, Case No. 18-11280 (E.D. Mich. 2018) ("[D]istrict courts, not bankruptcy courts, have original and exclusive jurisdiction over any action for the recovery or enforcement of any forfeiture.").

Ex. G.

14.  Consistent with its February 8, 2019 ruling, the Bankruptcy Court granted the Chapter 7 Trustee's motion, but only as to assets that were not subject to forfeiture proceedings in Sacramento. See In re Double Jump Inc., Case 19-bk-50102, Dkt. 616.

### F.  This Forfeiture Action.

15.  On April 15, 2019, the United States initiated this civil forfeiture action in the Eastern District of California ("Forfeiture Action"). The Forfeiture Action is an "action *in rem* … seeking the forfeiture of real property involved in, and traceable to, an investment fraud and money laundering scheme [involving] a solar equipment company with its principal place of business in the Eastern District of California." Complaint, Dkt. 3 at ¶¶ 1, 6.

16.  The Eastern District of California is the "proper venue pursuant to Title 28, United States Code, Section 1355, because the acts giving rise to this *in rem* forfeiture action occurred in this district, many of the defendant properties are located in this district, and the California Limited Liability Companies ("LLCs") holding title to the defendant properties have their principal business location in this district." Dkt. 5 at ¶ 3.

17.  The Forfeiture Action identifies the fourteen "*In Rem* Defendants" listed below. The *In Rem* Defendants are owned by the Carpoffs personally and/or LLCs they formed and controlled. The LLCs are: Dora Dog Properties, LLC, Dog Blue Properties, LLC, Antioch Mini Storage, LLC, 4021 Pike Lane, LLC, 2750 Maxwell Way, LLC, 475 Channel Road, LLC, Fou Dog, LLC (hereinafter "the LLCs"). Dkt. 5 at ¶ 5, 10-18, 41-48.[7]

18.  The *In Rem* Defendants in the Forfeiture Action are (*respective owner in parentheticals*):

    a.  5383 Stonehurst Drive, Martinez, California (*owned by Jeff and Paulette Carpoff personally*);
    b.  14 Goree Court, Martinez, California; (*owned by Jeff and Paulette Carpoff personally*);
    c.  180 Midhill Road, Martinez, California (*owned by Dora Dog Properties, LLC*);

---

[7] Of these entities, only three were included in the original bankruptcy filing: Dog Blue, LLC, Dora Dog, LLC, and 475 Channel Road, LLC. The other LLCs—and the Carpoffs personally—are not in bankruptcy.

7

United States' Ex Parte Application
For a Restraining Order

    d.  186 Farm Lane, Martinez, California (*owned by Jeff and Paulette Carpoff personally*);
    e.  315 Summerhill Lane, Martinez, California (*owned by Jeff and Paulette Carpoff personally*);
    f.  815 Sunset Drive, Antioch, California (*owned by Antioch Mini Storage, LLC*);
    g.  1062 Mohr Lane, Unit C, Concord, California (*owned by Dog Blue Properties, LLC*);
    h.  4021 Pike Lane, Concord, California (*owned by 4021 Pike Lane, LLC*);
    i.  4800 Blum Road, Unit 1, Martinez, California (*owned by Dog Blue Properties, LLC*);
    j.  4808 Blum Road, Unit 2, Martinez, California (*owned by Jeff and Paulette Carpoff personally*);
    k.  2750 Maxwell Way, Fairfield, California (*owned by 2750 Maxwell Way, LLC*);
    l.  84 Carolina Cherry Drive, Las Vegas, Nevada (*owned by Jeff and Paulette Carpoff personally*);
    m.  472-475-477 E. Channel Road, Benicia, California (*owned by 475 Channel Road, LLC*); and
    n.  Lot 51-80 Park Road, Benicia, California (*owned by Fou Dog, LLC*).

19. As alleged in the Complaint, DC Solar's principals used millions of dollars from a tax equity fraud to purchase the *In Rem* Defendants now held by the Carpoffs personally and/or their LLCs. Dkt. 5 at ¶ 38. For instance, the Carpoffs own 815 Sunset Drive, LLC. That entity holds title to Defendant *In Rem* 815 Sunset Drive, real property in Antioch, California that was purchased with approximately $3.8 million stolen from tax equity investors. Dkt. 5 at ¶ 44.

20. The Carpoffs own additional entities that hold title to *In Rem* Defendants. Dora Dog, LLC, an entity owned by the Carpoffs, holds title to *In Rem* Defendant 180 Midhill Road, real property in Martinez, California that was purchased with approximately $831,584.60 from tax equity investors. Dkt. 5 at ¶ 42(a).

**G.   The California LLC Trustee's Latest Effort to Seize Control Over the Real Property Purchased with Fraud Proceeds from DC Solar's Victims.**

21. The California LLC Trustee has moved to enforce the automatic stay provisions against this Forfeiture Action and the one filed on February 8, 2019 in the Eastern District of California. In his zeal to exert control, the California LLC Trustee alleges that In re Chapman, which has been precedent for over fifteen years, was wrongly decided by the Ninth Circuit BAP. See In re Double Jump Inc., Case 19-bk-50102, Dkt. 670 at 8 (*motion attached as Exhibit F*). Alternatively, the California LLC Trustee demands that the Bankruptcy Court exercise "its equitable powers" and impose an indefinite

stay of the Forfeiture Action "until such time as Congress votes on the pending FAIR Act," a Congressional Bill dealing with forfeiture statutes, introduced in March 2019 before the U.S. House of Representatives. See id. at 14. That motion remains pending before the Bankruptcy Court.

22. As discussed below in more detail, the California LLC Trustee is wrong. District courts and not bankruptcy courts, have original and exclusive jurisdiction over any action for the recovery or enforcement of any forfeiture. 28 U.S.C. § 1355(a). District courts—in the first instance—must determine the correctness of the forfeiture action. See 18 U.S.C. § 981(c) (property seized is "subject only to the orders and decrees of the [district] court" that has jurisdiction); see also Diversified Fiber Prods. v. United States (In re Thena, Inc.), 190 B.R. 407, 410-11 (D. Or. 1995) (concluding property subject to civil forfeiture in connection with criminal matter is not property of bankruptcy estate).

23. Furthermore, the Forfeiture Action—which seeks the forfeiture of property derived from the proceeds of criminal activity—is an action to enforce the government's police powers.[8] Thus, as recognized by the great weight of judicial authority, the Forfeiture Action falls squarely within an exception to the automatic stay, as the Bankruptcy Court rightly concluded three months ago. See Exh. B at 145; see also James v. Draper (In re James), 940 F.2d 46, 51 (3d Cir. 1991) ("a civil forfeiture proceeding is an exception to the automatic stay under the 'police power' exception of section 362(b)(4)"); WinPar Hospitality Chattanooga, LLC v. United States, (In re WinPar Hospitality Chattanooga, LLC), 401 B.R. 289, 294 (Bankr. E.D. Tenn. 2009) (civil forfeiture action under 18 U.S.C. § 981 "falls within the police powers exception specified at 11 U.S.C. § 362(b)(4), and therefore is not

---

[8] Some courts apply the so-called "pecuniary purpose" and "public policy" tests in determining whether an action is excepted from the automatic stay. The pecuniary purpose test "determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare." Berg v. Good Samaritan Hosp. (In re Berg), 230 F.3d 1165, 1167 (9th Cir. 2000). Under this standard, "[i]f the government action is pursued solely to advance a pecuniary interest of the governmental unit, the stay will be imposed." Id. The public policy test, on the other hand, "distinguishes between government actions that effectuate public policy and those that adjudicate private rights." Id. If either test is met, the government's action is not stayed. Chapman, 264 B.R. at 569. Here, the Forfeiture Action easily satisfies both tests. The primary purpose of a forfeiture action is to deter criminal activity and to deny criminals the benefits of their ill-gotten gains, not to advance the pecuniary interests of the government. United States v. One (1) 1976 Cessna Model 210L Aircraft, 890 F.2d 77, 79 (8th Cir. 1989) ("The underlying purpose of the forfeiture statutes is to deter further wrongdoing.") (citing Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 680-84 (1974)); WinPar, 401 B.R. at 294 (forfeiture action under 18 U.S.C. § 981 has the "well recognized public benefits" of "punishment of a criminal and the deterrence of others who might be like minded"); United States v. 45 Poquito Road, 2006 WL 2233645, at *4 (D. Or. 2006). Thus, the Forfeiture Action satisfies the police power exception under the pecuniary interest test. Chapman, 264 B.R. at 570; WinPar, 401 B.R. at 294; 45 Poquito Road, 2006 WL 2233645, at *4. Similarly, the Forfeiture Action effectuates the public policy of deterring crimes and denying profits to criminals, and therefore satisfies the public policy test. Chapman, 264 B.R. at 570; WinPar, 401 B.R. at 294; 45 Poquito Road, 2006 WL 2233645, at *4.

United States' Ex Parte Application
For a Restraining Order

stayed by the Bankruptcy Code"); <u>Brewer v. United States (In re Brewer)</u>, 209 B.R. 575, 577 (Bankr. S.D. Fla. 1996) (civil forfeiture action was "an exercise of the federal government's police power, and, pursuant to 11 U.S.C. § 362(b)(4), is not stayed by 11 U.S.C. § 362(a)"); <u>Boricua Motor Leasing Corp. v. Commonwealth of Puerto Rico</u>, 154 B.R. 834, 835-36 (D. Puerto Rico 1993) (affirming bankruptcy court ruling that "civil forfeiture action c[ame] within the police power exception").

## RELEVANT PROCEDURAL HISTORY

1. As explained herein, on April 15, 2019, the United States filed this Forfeiture Action in Sacramento and foreclosed DC Solar's attempt to leverage real property purchased with fraud proceeds. Dkt. 1, 5. Since the filing of this Forfeiture Action, the United States served the forfeiture Complaint on potential claimants, lodged the Complaint on the bankruptcy docket, posted a copy of the Complaint on the properties, and published the Forfeiture Action on the official internet government forfeiture site, www.forfeiture.gov. <u>See</u> Dkt. 6-13. Further, the United States has filed the restraint of a lis pendens against each of the *In Rem* Defendants. <u>See</u> Dkt. 14-26.

2. Three parties have so far appeared in the Forfeiture Action. First, China Bank and Trust ("CTBC") filed a claim as the lienholder of *In Rem* Defendant 2750 Maxwell Way in Fairfield, California and 4021 Pike Lane in Concord, California. <u>See</u> Dkt. 6. CTBC's loan is in default and they state they are owed at least $9,611,752.35, broken down as follows: $5,689,856.77 (*2750 Maxwell Way*) and $3,921,895.58 (*4021 Pike Lane*). <u>Id.</u>; <u>see</u> also Exh. D, *attached*. Second and third, Jeff and Paulette Carpoff, the owners and principals of DC Solar and the LLCs described herein, have entered the case as owners of the *In Rem* Defendants. Dkt. 40-41. Several potential tax equity investor-victims and the Chapter 7 bankruptcy trustees have requested extensions of time to file claims in this case. The United States accommodated each request, initially giving each party to June 1, 2019 to enter the case.

3. The United States has received correspondence from a second bank, Heritage Bank, which said that it loaned money to the Carpoffs to purchase *In Rem* Defendant 473-475-477 Channel Road, real property located in Benicia, California. Heritage Bank's loans are currently in default and the bank is owed at least $1,144,047.00. <u>In re Double Jump Inc.</u>, Case 19-bk-50102, Dkt. 476. Heritage Bank has filed a motion in the Bankruptcy Court seeking to lift the automatic stay to allow it to seek its "lawful remedies" in California state court. <u>In re Double Jump Inc.</u>, Case 19-bk-50102, Dkt. 476, 770.

**AUTHORITY TO ISSUE RESTRAINING ORDER**

1. Pursuant to 18 U.S.C. § 983(j)(1)(A), this Court is authorized to enter a restraining order or injunction, create receiverships or appoint conservators, or take any other action to preserve the availability of property subject to forfeiture. The United States seeks an order to preserve each of the *In Rem* Defendants under this authority.

2. To ensure the availability of assets for civil forfeiture, 18 U.S.C. § 983(j)(1)(A) provides that the Court may enter a restraining order upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture. As set forth above, in this matter, the United States has filed a civil forfeiture complaint alleging that *In Rem* Defendants are subject to forfeiture. Accordingly, this Court is authorized to order the restraint of the property the United States seeks to forfeit through the Complaint in this case. See Gang Luan v. United States, 722 F.3d 388, 392-93 (D.C. Cir. 2013) ("[S]ection 983(j)(1)(A) provides that a court may enter a restraining order that lasts during the pendency of forfeiture proceedings, 'upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture.'").

3. The statutory scheme for the restraint of civil forfeiture defendants parallels the statutory scheme for the pretrial restraint of property for criminal forfeiture. Compare 18 U.S.C. § 983(j) with 21 U.S.C. § 853(e). The Court's ability to impose restraints to prevent the transfer, removal or dissipation of a defendant's assets prior to the resolution of forfeiture proceedings is well-established. See United States v. Jones, 160 F.3d 641, 647 (10th Cir. 1998) ("the sole purpose of the bill's restraining order provision ... is to preserve the status quo, i.e. to assure the availability of the property pending disposition of the [case]") (citations omitted); see also United States v. Wittig, 2007 WL 1875677, *6 (D. Kan. 2007) ("The purpose of 21 U.S.C. §853(e)(1)(A) is to preserve assets and assure the availability of property pending disposition of the criminal case.").

4. The California LLC Trustee's motion in the Bankruptcy Court has made clear his intention to control, sell, and/or encumber the *In Rem* Defendants, if not restrained. The United States merely seeks to maintain the status quo pending a final order. The United States' interest in property subject to forfeiture vests at the time of the commission of the offense giving rise to forfeiture, which, as

set forth in detail in the Declaration of FBI Special Agent Christopher Phillips, predated any bankruptcy filing by many years. See 18 U.S.C. § 981(f). Because of this "relation back doctrine," it would not be logical to permit the bankruptcy trustee to liquidate and distribute property that may ultimately be forfeited to the United States. See Chapman, 264 B.R. at 572 (holding forfeiture action not subject to automatic stay and recognizing "relation-back doctrine" removes property from bankruptcy estate).

5. A restraining order will equally enforce this Court's jurisdiction and preserve the availability of the *In Rem* Defendants for forfeiture for the benefit of D.C. Solar's fraud victims. After all, "[d]istrict courts, not bankruptcy courts, have original and exclusive jurisdiction over any action for the recovery or enforcement of any forfeiture." In re VPH Pharmacy, Inc., 2018 WL 357472165, at *2 (E.D. Mich. 2018) (citing 28 U.S.C. § 1355(a)). It is not unreasonable to require the bankruptcy trustee to file a forfeiture claim and seek authority to control and sell the properties from the Court with jurisdiction over them—*this Court*. This is especially so when the trustee has sought to invoke the "equitable powers" of a bankruptcy court to *indefinitely stay* a case being actively litigated in U.S. District Court.

6. The restraining order would also apply to lenders seeking to foreclose. See United States v. 2526 155th Place SE, Bellevue, Wash., 2008 WL 5246381, at *2 (W.D. Wash. Dec. 17, 2008) (entering a restraining order under 18 U.S.C. § 983(j) to prevent a bank's foreclosure of real property subject to forfeiture). At this time, the United States understands at least three *In Rem* Defendants are in default and at risk of foreclosure. To preserve as much equity as possible in those properties, the United States seeks the appointment of the USMS to preserve and sell them. See 18 U.S.C. § 983(j)(1)(A) (district courts are authorized to "take any... action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture," once a complaint has been filed). The United States proposes that the USMS maintain the distressed *In Rem* Defendants in the interim and then sell them to the strongest buyer.[9] The appointment request directly addresses the urgency of accruing bank debt and the net sale proceeds will be returned to the case as substitute *res* for final adjudication by this Court.

---

[9] Attached as Exhibit E are documents describing the USMS' capacity, skill, and successful track-record in managing and selling real property.

7.     Supplemental Rule G(7)(b) further authorizes the USMS to sell the distressed *In Rem* Defendants.  A "court may order [a] property sold if … the property is subject to a mortgage or to taxes on which the owner is in default [or] the court finds other good cause."  Rule G(7)(b)(i)(C)-(D).  Rule 7(b) identifies the USMS as having the authority to sell distressed properties and, when the sale is made, the sale proceeds will be considered a "substitute res" subject to forfeiture in place of the property that was sold.  Id.

8.     Section 983(j)(1)(A) does not require this Court to hold a hearing before entering a restraining order.  Notice and an opportunity for a hearing are only required when the United States seeks a restraining order "prior to the filing of [a civil forfeiture] complaint."  18 U.S.C. § 983(j)(1)(B); see also e.g., In re Restraint of All Assets Contained or Formerly Contain in Certain Inv. Accounts at UBS Fin. Servs., Inc., 860 F. Supp. 2d 32, 39-40 (D.D.C. 2012) (interpreting Section 983(j)(1)(A) to not require a pre-restraint hearing in the context of a foreign forfeiture under 28 U.S.C. § 2467, which incorporates the procedures in Section 983); In re $6,871,042.36, 217 F. Supp. 3d 84, 98 (D.D.C. 2016) ("Section 983(j)'s hearing requirement governs *pre-restraint hearings* and is applicable 'only when the Government seeks a restraining order *before* the institution of a foreign criminal or forfeiture proceeding'") (citing In re Seizure of Approximately $12,116,153.16, 903 F. Supp.2d 19, 31–32 (D.D.C. 2012)); In re Restraint of All Assets Contained or Formerly Contained in Certain Inv. Accounts at UBS Fin. Servs., Inc., 860 F. Supp. 2d 32, 39 (D.D.C. 2012) (stating that the hearing required under § 983(j) "only applies at the prefiling stage of foreign criminal or forfeiture proceedings").

9.     Here, the United States' proposed restraining order is based upon the Complaint, which is itself a sufficient basis for issuance of the order because it alleges that the *In Rem* Defendants are properties subject to civil forfeiture.  18 U.S.C. § 983(j)(1)(A).  Additionally, the United States has alleged in the Complaint that, during the criminal investigation, three different federal magistrate judges found probable cause that DC Solar, and potentially its principals and others, perpetrated an investment tax fraud scheme and conspiracy, in violation of Title 18, United States Code, Section 1343 (wire fraud) and Section 371 (conspiracy), and that certain individuals purchased numerous assets, among other transactions, with the proceeds that were derived from fraud scheme.  See Dkt. 3 at ¶¶ 15-16 (discussing search and seizure warrants signed by United States Magistrate Judges in the Eastern and Northern

United States' Ex Parte Application
For a Restraining Order

Districts of California); see also Kaley v. United States, 571 U.S. 320, 323–24 (2014) (concluding the government may restrain property prior to trial when there is probable cause to think the property is forfeitable). The United States highlights these prior judicial findings to show the strength of the facts alleged in its Complaint and accompanying FBI Agent's Declaration, which set forth the scheme and trace crime proceeds to each of the *In Rem* Defendants.

10. Additionally, only the owners and principals of DC Solar and the LLCs, Jeff and Paulette Carpoff, have entered the case thus far. No other claimant thus far has equivalent standing to challenge the forfeitures.

## CONCLUSION

Accordingly, the United States respectfully requests that this Court enter an order restraining and enjoining the sale, pledge, transfer or any other means of disposing, controlling, or encumbering the *In Rem* Defendants and any action by any person or entity that would allow or cause the *In Rem* Defendants to diminish in value, without this Court's prior approval. The United States further requests this Court enter an order appointing the United States Marshals Service to maintain and sell *In Rem* Defendants 2750 Maxwell Way, 4021 Pike Lane, and 473-475-477 E. Channel Road and to return any net proceeds to this case as substitute *res* for final adjudication by this Court.

A Proposed Order is filed with this Application.

Dated: 5/14/2019

McGREGOR W. SCOTT
United States Attorney

By: /s/ Andre M. Espinosa
/s/ Kevin C. Khasigian
KEVIN C. KHASIGIAN
ANDRE M. ESPINOSA
Assistant U.S. Attorneys

United States' Ex Parte Application
For a Restraining Order